UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAYVON DIAZ,

                                Petitioner,

    v.

UNITED STATES OF AMERICA,

                                Defendant.

No. 11-CR-630 (KMK)
No. 16-CV-6241 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

On September 11, 2012, pro se Petitioner Rayvon Diaz ("Diaz" or "Petitioner") pled guilty to one narcotics conspiracy charge and one firearms charge related to the narcotics charge, (Gov't's Mem. in Opp'n to Pet. ("Gov't's Opp'n") Ex. B ("Plea Tr."), at 32–35, 42 (Dkt. Nos. 1267, 1267-2)), and was sentenced to a below-Guidelines sentence of 150 months' imprisonment on July 17, 2013, (*see* Tr. (July 17, 2013 Sentencing) ("Sentencing Tr.") 27 (Dkt. No. 1146)). Petitioner has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (the "Petition"). (*See* Pet. (Dkt. No. 1181).)[1] For the reasons stated herein, the Petition is denied.

## I.  Factual History

On August 3, 2011, a grand jury returned Indictment S1 11-CR-630 ("the Indictment"), (Dkt. No. 4), charging Petitioner and 46 co-defendants with conspiring to distribute, and possessing with intent to distribute, more than 280 grams of crack from in or about 2000 up to and including in or about August 2011, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (*See* Indictment ¶¶ 1–15.) The Indictment also charged Petitioner and most of his

---

[1] All citations in this Order are to the criminal docket, Case No. 11-CR-630, unless noted otherwise.

co-defendants with the use, possession, and discharge of firearms during and in relation to that narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. (*Id.* ¶ 16.)

These charges followed an investigation of a violent street gang known as the "Elm Street Wolves," which operated in and around Yonkers during the time alleged in the Indictment. (*Id.* ¶¶ 1–3.) The Elm Street Wolves and their associates sold crack at, among other places, the intersection of Elm and Oak Streets. (*Id.* ¶ 2.) The Indictment alleged that certain members of the Elm Street Wolves maintained firearms for use by other members and associates of the gang. (*Id.* ¶ 7.) These firearms would be stored at readily-accessible locations and be used to, among other things, protect the gang's territory and attack rival gang members. (*Id.*)

On September 11, 2012, pursuant to a plea agreement (the "Plea Agreement"), Petitioner pled guilty to: (i) conspiring to distribute, and to possess with the intent to distribute, at least 28 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, and (ii) using, possessing, and discharging a firearm during and in relation to the narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (*See* Gov't's Opp'n Ex. B ("Plea Agreement") 1–2 (Dkt. No. 1267-1).) In the Plea Agreement, Petitioner agreed to the following Guidelines calculation. The applicable offense level for Count One was 29. (*Id.* at 3.) Petitioner's prior convictions yielded five criminal history points, placing him in Criminal History Category III. (*Id.* at 3–5.) Petitioner's Guidelines Range on Count One was 108 to 135 months' imprisonment. (*Id.* at 5.) Count Two carried a mandatory sentence of 60 months' imprisonment, to run consecutively to the sentence imposed for Count One. (*Id.*) Accordingly, the Stipulated Guidelines Range for all three offenses was 168 to 195 months' imprisonment. (*Id.*)

The Plea Agreement also contained a waiver providing that Petitioner would not "file a direct appeal," "nor bring a collateral challenge, including but not limited to an application under

[28 U.S.C. § 2255]," "nor seek a sentence modification . . . of any sentence within or below the Stipulated Guidelines Range of 168 to 195 months of imprisonment." (*Id.* at 6.)  The Parties further agreed that this "provision [was] binding on the parties even if the Court employ[ed] a Guidelines analysis different from that stipulated to herein." (*Id.*)

Before accepting Petitioner's plea, the Court conducted a thorough Rule 11 allocution. (*See generally* Plea Tr.)  *See* Fed. R. Crim. P. 11(b).  In particular, the Court confirmed that Petitioner was competent to enter a guilty plea, that Petitioner was fully aware of his constitutional rights and the waiver of many of those rights should he plead guilty, that Petitioner had had enough time to talk about the case with his attorney and was satisfied with his attorney's representation of him, that Petitioner was aware of the charges against him, and that Petitioner was aware of the statutory maximum and mandatory minimum sentences he faced.  (Plea Tr. 6–8, 9–20.)  The Court also advised Petitioner that it was the Court, and only the Court, that would determine the appropriate sentence to impose, and that the Court was not bound by what the Parties agreed to in the Plea Agreement regarding the Guidelines Range. (*Id.* at 23–24.)  The Court also informed Petitioner that it was not required to impose a sentence within the applicable Guidelines Range.  (*Id.* at 24–25.)  And, the Court specifically discussed with Petitioner the meaning and significance of the appeal waiver provision, advising him that if the Court "impose[d] [a sentence] . . . within or below the stipulated [G]uideline[s] range," under that provision, he had agreed "that [he] [would] not appeal or otherwise legally challenge [that] sentence." (*Id.* at 29.)

At sentencing, the Court adopted the calculation agreed to by the Parties and calculated by the Probation Department, and imposed a below-Guidelines sentence of 150 months' imprisonment.  (*See* Sentencing Tr. 17–19, 27.)

3

Petitioner did not appeal his conviction or sentence, however, on September 22, 2014, Petitioner filed a motion for a reduction of his sentence, pursuant to 18 U.S.C. § 3582(c)(2), based on a proposed amendment to the Sentencing Guidelines applicable to certain narcotics offenses.  (*See* Dkt. No. 988.)  The Court denied the motion on September 26, 2014, on the ground that the proposed amendment had not yet been adopted.  (*See* Dkt. No. 993.)  Petitioner renewed the motion after the amendment had taken effect, (Dkt. No. 1033), but the Court denied it principally on the ground of Petitioner's misconduct in prison, (Dkt. No. 1098).[2]

Petitioner subsequently filed the instant Petition, dated July 30, 2016.  (*See generally* Pet.)

## II.  Discussion

Petitioner claims that he is entitled to have his sentence vacated under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  (Pl.'s Supplemental Mem. of Law in Supp. of Pet. ("Pl.'s Supp. Mem.") 1–3 (Dkt. No. 1182).)  He further argues that his sentence should be vacated because his guilty plea was not knowing and voluntary.  (*Id.*)  As explained below, Petitioner's challenge to the sentence imposed by the Court fails both on procedural grounds and on the merits.

### A.  Standard of Review

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

---

[2] After the Petition was filed, on August 26, 2016, the Court issued an Order directing Petitioner to show cause as to (1) why *Johnson v. United States*, 135 S. Ct. 2551 (2015), applied to his Petition and (2) why his Petition was not time-barred.  (Dkt. No. 1184.)  On September 19, 2016, Petitioner filed a Motion for equitable tolling and for a stay of the § 2255 proceedings pending the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), (the "Motion for Equitable Tolling" or "Mot. for Equitable Tolling").  (*See generally* Mot. for Equitable Tolling (Dkt. No. 1187).)  On July 19, 2017, the Court denied the Motion for Equitable Tolling.  (Dkt. No. 5, Case No. 16-CV-6241.)

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).³ "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (quotation marks omitted) (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To justify a hearing, the petition "must set forth specific facts supported

---

³ Title 28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id.* at 131 (citations omitted). Finally, because Petitioner is appearing pro se, the Court construes the Petition and his other submissions liberally and interprets them to raise the strongest arguments that they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

    B.  Analysis

        1.  Statute of Limitations

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition for relief pursuant to 28 U.S.C. § 2255 is subject to a one-year limitation period that runs from the latest of four dates: (1) "the date on which the judgment of conviction becomes final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f).

None of these provisions is available to Petitioner. His conviction became final far more than a year before he filed his present Petition in July 2016. *See* 28 U.S.C. § 2255(f)(1). Moreover, Petitioner does not argue that governmental action somehow prevented him from filing his Petition at some point before July 2016, *see* 28 U.S.C.§ 2255(f)(2), nor does he assert any claims based on facts discovered after his conviction, *see* § 28 U.S.C. 2255(f)(4). The Petition is likewise untimely under § 2255(f)(3). To the extent the Petition purports to assert a

6

right initially recognized by the Supreme Court's June 26, 2015 decision in *Johnson,* his petition was dated July 30, 2016, more than a year after *Johnson* was decided.

In his Motion for Equitable Tolling, Petitioner maintains that the limitation period for § 2255 petitions based on *Johnson* runs not from the date of *Johnson* itself, but from the date of the Supreme Court's later decision in *Welch v. United States*, 136 S. Ct. 1257 (2016), which held that *Johnson* applies retroactively on collateral review. (Mot. for Equitable Tolling 1–2.) But the Supreme Court foreclosed that argument in *Dodd v. United States*, 545 U.S. 353 (2005), when it rejected the claim that the limitation period in § 2255(f)(3) "runs from the date on which the right asserted was made retroactively applicable." *Id.* at 357. Instead, the Supreme Court held that § 2255(f)(3) "unequivocally identifies one, and only one, date from which the [one]-year limitation period is measured: 'the date on which the right asserted was initially recognized by the Supreme Court.'" *Id.* For these reasons, the Petition is time-barred.

    2. Waiver

Aside from being time-barred, Petitioner's claim is waived. Petitioner agreed in the Plea Agreement that he would "not file a direct appeal," or litigate "under Title 28, United States Code, Section 2255 and/or Section 2241[,] . . . any sentence within or below the Stipulated Guidelines Range." (Plea Agreement 6.) This provision was highlighted during the colloquy at the plea allocution, (Plea Tr. 29), thus plainly validating the waiver. *See United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (noting that a waiver is knowing if "the defendant fully understood the potential consequences of his waiver" (citation and quotation marks omitted)); *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (noting that in determining whether a defendant understood the consequences of a waiver, the district court is "entitled to rely upon the defendant's sworn statements, made in open court . . . , that he

understood . . . that he was waiving his right to appeal a sentence below [the Stipulated Guidelines Range]" (citation omitted)).  Because the Court imposed a sentence below the Stipulated Guidelines Range, Petitioner must first overcome the hurdle imposed by this valid waiver.  *See Flamenco v. United States*, No. 11-CV-633, 2014 WL 775000, at *3 (E.D.N.Y. Feb. 24, 2014) ("Where a defendant knowingly and voluntarily waives his right to appeal if his sentence falls at or below a stipulated range pursuant to the plain language of a plea agreement, a challenge to the sentence must be dismissed." (citation omitted)).

      The Second Circuit "ha[s] long held that 'waivers of the right to appeal a sentence are presumptively enforceable.'"  *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (alteration omitted) (quoting *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010)).  Indeed, courts have "repeatedly upheld the validity of such waivers" where they are "knowingly, voluntarily, and competently provided by the defendant."  *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000) (collecting cases); *see also United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." (collecting cases)).  "A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is also valid and enforceable."  *Abramo v. United States*, No. 12-CV-1803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014) (citations omitted); *see also Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement." (citation omitted)); *Russo v. United States*, 313 F. Supp. 2d 263, 265 (S.D.N.Y. 2004) ("The [Second] Circuit has specifically held that a waiver of a right to appeal in a plea agreement includes a waiver of a right to file a § 2255 petition challenging his or her sentence." (citing *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995))).

8

The "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *Gomez-Perez*, 215 F.3d at 319. One area where the presumptive enforceability of a waiver may be overcome is by "an attack on the validity of the process by which the waiver has been procured." *Frederick*, 308 F.3d at 195 (citations omitted). There are other exceptions that can invalidate a waiver. *See Karimu v. United States*, Nos. 13-CV-1689, 10-CR-422, 2013 WL 4017168, at *3–4 (S.D.N.Y. Aug. 6, 2013) (discussing circumstances barring the application of a sentence/collateral challenge waiver provision in a plea agreement). One occurs when a court imposes a sentence based on certain "constitutionally impermissible factors," such as a defendant's race, ethnicity, or other prohibited biases. *See Gomez-Perez*, 215 F.3d at 319 (citation omitted); *see also United States v. Johnson*, 347 F.3d 412, 415–16, 418–19 (2d Cir. 2003) (indigent status); *United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir. 1994) (naturalization status). Relatedly, the court's abdication of its judicial responsibility, by failing to offer *any* rationale for its sentence, can invalidate a waiver. *See United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). Another exception involves a breach of the plea agreement by the Government. *See Gomez-Perez*, 215 F.3d at 319. None of these circumstances has been, nor could be, alleged here.

Petitioner makes no argument remotely challenging the effect of the waiver here, so given that the sentence he is challenging is covered by the waiver, the Petition is denied on this ground as well.

### 3. *Johnson*

Petitioner argues that he is eligible for relief in the aftermath of *Johnson*, which held that the so-called "residual clause" within the definition of "violent felony" in the Armed Career Criminal Act ("ACCA") violates due process. 135 S. Ct. at 2563. However, Petitioner was not

9

convicted of any counts involving the ACCA, but was convicted of violating 18 U.S.C. § 924(c). That statute criminalizes using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime, or possessing a firearm in furtherance of such crime. Section 924(c) contains a definition for "crime of violence" with a similar—but not identical—"residual clause" to the one invalidated by the Supreme Court in *Johnson*. *See* 18 U.S.C. § 924(c)(3).

Petitioner maintains that under *Johnson*, the residual clause of § 924(c) is also void, and as a result, his § 924(c) conviction should be vacated. (Pl.'s Supp. Mem. 3.) This argument is of no avail to Petitioner because, among other reasons, he was not convicted of possessing a firearm in furtherance of a crime of violence. Rather, Petitioner pled guilty to possessing a firearm in furtherance of a drug trafficking crime. (*See* Plea Agreement 1–2.) *Johnson* did not address the definition of a drug trafficking crime, and Petitioner does not claim otherwise. As a result, *Johnson* is inapposite, and Petitioner is not entitled to relief on the basis of that decision.

    4.  Knowing and Voluntary Plea

        a.  Petitioner was aware of the elements of  § 924(c)

Petitioner argues that his guilty plea was not knowing and voluntary because (1) he was unaware "that §924(c) required a separate gun or firearm from the predicate crime to be 'used' in furtherance or in relation to the narcotic[s] conspiracy under §[]841(b)(1)(B)"; and (2) he was not notified of the applicable mandatory minimum penalties before he pled guilty. (Pl.'s Supp. Mem. 2.) The transcript of Petitioner's change of plea hearing demonstrates that both claims are meritless.

Relying on *Bailey* v. *United States*, 516 U.S. 137 (1995), Petitioner asserts that § 924(c) requires that a separate firearm be "used"—meaning "actively employed"—in furtherance of the predicate crime. (*Id.*) This argument ignores the fact that following the Supreme Court's

decision in *Bailey*, Congress amended § 924(c) to criminalize possessing a firearm, in addition to using or carrying a firearm, in furtherance of the predicate crime. *See United States v. O'Brien*, 560 U.S. 218, 233 (2010) (describing Congress's amendment of § 924(c) to include the word "possesses" as the "so-called *Bailey* fix"). The transcript of Petitioner's plea hearing establishes that Petitioner was advised of the elements of § 924(c), and that he allocuted to possessing a firearm in violation of that statute, before the Court accepted his guilty plea.

For example, at Petitioner's change of plea hearing, the Court read aloud the second count of the Indictment charging Petitioner with a § 924(c) violation. (Plea Tr. 14.) Petitioner unambiguously affirmed that he understood the charge, and that he had reviewed the Indictment with his attorney. (*Id.* at 12, 14.) The Government, moreover, summarized the elements that would have to be proven in order for Petitioner to be convicted of the § 924(c) charge:

> AUSA BAUER: . . . Now, Count Two is the firearm charge brought under Title 18, United States Code, Section 924(c).
> The elements are as follows:
> First, that on or about the dates charged in the [I]ndictment, the defendant used or carried or possessed a firearm;
> Second, that he did so knowingly; and
> Third, that the defendant possessed that firearm during and in relation to a drug trafficking crime; in this case, the narcotics conspiracy charged in Count One.

(*Id.* at 32–33.)

Petitioner then engaged in a lengthy colloquy with the Court, during which he allocuted to possessing a firearm in furtherance of the narcotics distribution conspiracy charged in Count One. (*Id.* at 35–41.) At several points during that colloquy, Petitioner explicitly affirmed under oath that his possession of the firearm was in furtherance of the drug trafficking offense:

> THE COURT: And you said you were involved in possessing a firearm that was part of the conspiracy?
> THE DEFENDANT: Yes.
> THE COURT: And this was a firearm that was used to help carry out the conspiracy; that is, to help sell the crack?

11

THE DEFENDANT: Yes.
THE COURT: Okay.  Are you sure?  I don't want to put words in your mouth.
THE DEFENDANT: Yes.

*     *     *     *

THE DEFENDANT: Listen.  In my own words, I was around guns.  I don't know if they were used to protect something specifically.  But I had knowledge that there were guns around, and I possessed a gun before.
THE COURT: Okay.  So when you say you had knowledge that there were guns around—
These sales, they were taking place out in the street?
THE DEFENDANT: Yes.
THE COURT: And some of the people, whether or not it was you, there were some other people who were part of the conspiracy who were carrying guns?
THE DEFENDANT: Yes.
THE COURT: And were they carrying guns for protection?
THE DEFENDANT: Yes.
THE COURT: I mean, they weren't carrying them to go hunting.  They were carrying them for protection, I assume.  Right?
THE DEFENDANT: Yes.
THE COURT: And is it because there was some concern that there would be people who might try to harm you and the others who were out on the street selling drugs?
THE DEFENDANT: Yes.

*     *     *     *

THE COURT: . . . Okay.  So the bottom line is, you didn't run around carrying a gun all the time, maybe not even any of the time, but there were others who either had a gun on them or they could get a gun if they needed it.
THE DEFENDANT: Yes.
THE COURT: And if you needed it, was there a gun available to you?  I'm not saying you ever needed it, but was there one available to you?
THE DEFENDANT: Yes.
THE COURT: Okay.  And this was for protection.  And you knew that that gun was there if you needed it.
THE DEFENDANT: Yes.
THE COURT: So even though you didn't have problems with people, if a problem arose, there was a gun either you or others in the conspiracy could access if need be.
THE DEFENDANT: Yes.
THE COURT: Okay.  And that was all for protection—
THE DEFENDANT: Yes.

>THE COURT: —as Ms. Messina says, to protect turf or whatever, along those lines. Is that a fair statement?
>THE DEFENDANT: Yes.

(*Id.* at 35–37, 40–41.)

The record makes abundantly clear that both the Court and the Government advised Petitioner in plain terms of the elements of the § 924(c) charge. Petitioner's allocution, moreover, further indicates his understanding that he violated § 924(c) by possessing a firearm in furtherance of a narcotics conspiracy. Thus, it is beyond doubt that Petitioner received more than adequate notice for purposes of Rule 11 of the Federal Rules of Criminal Procedure. *See, e.g.*, *United States* v. *Obiorah*, 536 F. App'x 53, 56 (2d Cir. 2013) (holding that the defendant had adequate notice of the charges when he stated at his plea allocution "that he had read and understood the [I]ndictment . . . and that he had conferred with his attorney about the [I]ndictment," and "that he understood the elements of [the] charges" after the elements were summarized by the government); *see also United States* v. *Parkins*, 25 F.3d 114, 118 (2d Cir. 1994) (holding that the defendant received adequate notice under Rule 11 where he signed a plea agreement setting forth the elements of the charge and acknowledged at his plea hearing that he had read the information, understood it, and discussed it with his attorney).

### b. Notice of Sentence Exposure

The record also demonstrates that the Court specifically advised Petitioner of the mandatory minimum penalties applicable to both the narcotics conspiracy and the firearm offense. The Court's statements in this regard could not have been clearer: "So if convicted of Count One—this is the narcotics conspiracy . . . . You face a mandatory minimum of five years' imprisonment." (Plea Tr. 16–17.) Petitioner affirmed that he understood the penalty. (*Id.* at 17.) With respect to the § 924(c) charge, the Court engaged Petitioner in a similar colloquy: "In

13

connection with Count Two—this is the charge that you used or carried—used and carried a firearm during and in relation to the conspiracy charged in Count One—this charge carries the following sentence. It's a mandatory minimum sentence, which must run consecutive to any other sentence, of five years' imprisonment." (*Id.* at 17–18.) Petitioner again affirmed on the record that he understood the penalty. (*Id.* at 18.) The Court then summarized the total mandatory minimum penalty applicable to Petitioner: "So what this means, between the two counts together, is that . . . the mandatory minimum term is ten years, five years in connection with Count One, and the mandatory consecutive five years in connection with Count Two." (*Id.* at 18–19.) Petitioner again stated, under oath, that he understood. (*Id.* at 19.) At two subsequent points in the hearing, the Court reminded Petitioner that in imposing a sentence, the Court "can't go below the mandatory minimums that are established by Congress." (*Id.* at 25, 28.)

Furthermore, the Plea Agreement set forth the mandatory minimum penalties applicable to both counts. (Plea Agreement, at 1–2, 5.) As noted, Petitioner affirmed on the record that he had reviewed the Plea Agreement with his attorney, that his attorney had answered his questions about the Plea Agreement to his satisfaction, that he understood the document, and that he had signed it. (Plea Tr. 26.) Petitioner's claim that he was unaware of the applicable mandatory minimum sentences is baseless. *See, e.g.*, *United States* v. *Pico*, 2 F.3d 472, 475 (2d Cir. 1993) (noting that the defendant had ample notice of mandatory minimum penalty where it was set forth in his plea agreement and where the court advised the defendant of the mandatory minimum sentence before accepting his guilty plea).

Accordingly, there is no basis to Petitioner's claim that he did not knowingly or voluntarily plead guilty to the two charges.

III.  Conclusion

For the reasons discussed above, the Court dismisses the Petition.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

DATED:  March 30, 2020
        White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE